DUNNEGAN & SCILEPPI LLC
ATTORNEYS AT LAW
350 FIFTH AVENUE
NEW YORK, NEW YORK 10118

212-332-8300
212-332-8301 TELECOPIER

September 5, 2017

By ECF

Hon. Analisa Torres
United States District Judge
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street
New York, New York 10007

Re: Philpot v. UMG Recordings, Inc.
17 Civ. 5058 (AT)

Dear Judge Torres:

    We are attorneys for plaintiff Larry Philpot ("Philpot") and submit this joint letter with counsel for Defendant UMG Recordings, Inc. ("UMG"), pursuant to the Court's Order entered July 21, 2017, and in advance of the conference scheduled for September 7, 2017.

1. Statement of the Case

   a.  Philpot's statement

    This case involves a claim for infringement of the copyright in three of Philpot's photographs.  UMG copied and publicly displayed the works on its commercial website www.soundslikenashville.com.

    The only defense that UMG raises below is that the registrations of the copyrights are invalid because they identified the works as "unpublished."  The basis of UMG's argument is that Philpot posted the works on Wikimedia under a Creative Commons license before registration.  This argument has no merit for at least two reasons.

    First, while the definition of "publication" is difficult to apply in the Internet context, the photographs were unpublished at the time of their registration. The definition of "publication" under 17 U.S.C. § 101 provides:

> "Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

The first sentence should not apply because Philpot never distributed copies of the photographs. The second sentence should not apply because posting a work only on Wikimedia, even under a Creative Commons license, is not an "offering" of the photograph to a "group of persons for further … public display." (Emphasis added.) (The third sentence is confirmation that display on the Internet is not publication.)

Second, even if the photographs were published at the time of their registration, 17 U.S.C. § 411(b), provides additional conditions that an infringer must meet before such an inaccuracy in the registration prevents the enforcement of the copyright. UMG cannot meet at least two of these conditions.

      i.    Philpot did not provide any information to the Copyright Office knowing that it was incorrect. For the application, that included the Willie Nelson work, as "published." The Copyright Office later persuaded him to change it to "unpublished," by e-mailing him a definition of "publication" that contained only the first sentence in the statutory definition. Under 17 U.S.C. § 411(b)(1)(A), these facts should prevent the registration from being unenforceable.

      ii.    The Copyright Office has no history, which we can identify, of refusing the registration of copyrightable works on the ground that the applicant identified a published work as unpublished. To the contrary, the Copyright Office has a history of communicating with the applicant to reach a resolution. Under 17 U.S.C. § 411(b)(1)(B), these facts should prevent the registration from being unenforceable.

The fact that Philpot may have taken a different position, through other counsel, in other litigations, is not relevant. Philpot has not, in any event, taken inconsistent factual positions. Whether or not a "publication" has occurred within the meaning of 17 U.S.C. § 101 is a legal question. Taking a legal position in one case does not prevent the party from taking a different legal position in a different case, except perhaps unless the party has obtained judicial relief in reliance upon that first position. New York State Nat. Org. for Women v. Terry, 159 F.3d 86, 97 n. 7 (2d Cir. 1998)("This argument relies on a misunderstanding of the nature of judicial admissions, which are statements of fact rather than legal arguments made to a court."). See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber, 407 F.3d 34, 45 (2d Cir.), certified question accepted sub nom. Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt Int'l B.V. v. Philippe S.E. Schreiber, 5 N.Y.3d 730, 832 N.E.2d 1185 (2005), certified question withdrawn sub nom. Int'l B.V. (Found. of Shareholders' Comm. Representing Former

Hon. Analisa Torres
September 5, 2017
Page 3

Shareholders of Saybolt Int'l B.V.) v. Schreiber, 421 F.3d 124 (2d Cir. 2005)("As to judicial estoppel, that doctrine applies only in situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced.").

Apparently recognizing that its arguments concerning the validity of the copyright registration are unlikely to succeed, UMG attempts to cast Philpot's claim in an unfavorable light because (i) Philpot has brought numerous copyright infringement actions, and (ii) Philpot is seeking a substantial amount of damages.

The number of copyright actions that Philpot has commenced should not impair the value of his claim.  Philpot is the author of each of the copyrights in each of the infringement actions he has commenced.  While UMG seeks to cast Philpot in a bad light because, it asserts, he has commenced "nearly sixty" such infringement actions, a search of PACER reveals that UMG has commenced more than 6,000 copyright actions since 2000.

The fact that Philpot is seeking substantial damages should not impair the value of his claim.  17 U.S.C. § 504(c) authorizes the jury to award up to $150,000 per work in the case of a "willful" infringement.  In prior actions, UMG has obtained (and defended on appeal) jury awards of up to $80,000 per copyright against an individual downloader who made no profit from the infringement.  See Capitol Records Inc. v. Thomas-Rasset, 680 F. Supp. 2d 1045, 1050 (D. Minn. 2010), vacated, 692 F.3d 899 (8th Cir. 2012)("On June 18, 2009, the jury returned a verdict finding that Thomas–Rasset had willfully infringed all 24 sound recordings and awarding statutory damages in the amount of $80,000 for each song, for a total verdict of $1,920,000."); Capitol Records, Inc. v. Thomas-Rasset, 799 F. Supp. 2d 999, 1003 (D. Minn. 2011), vacated, 692 F.3d 899 (8th Cir. 2012)("The case proceeded to trial for a third time on November 2, 2010. On November 3, the jury returned a verdict awarding statutory damages in the amount of $62,500 for each song, for a total verdict of $1,500,000.").

      b.      Defendant's statement

Plaintiff, an Indiana resident, is a serial litigant that has filed dozens of copyright infringement complaints regarding photographs he otherwise freely licenses.  Many years ago, Plaintiff published photographs of the musicians Willie Nelson, Kenny Chesney, and Randy Travis (the "Photographs") on the public website Wikimedia Commons (www.commons.wikimedia.org) ("Wikimedia"), and granted all users a royalty-free license to download, reproduce, and display the Photographs (with attribution) for any purposes.  Despite this broad and free license, when Plaintiff believes that an individual or entity used the Photographs without listing his name as the photographer, Plaintiff files copyright infringement lawsuits and demands exorbitant financial settlements instead of simply asking for an attribution correction.  As Plaintiff appears to have uploaded the Photographs to Wikimedia directly, it seems he has created a cottage industry in ensnaring users of the Photographs into copyright infringement lawsuits. Indeed, a search of the Pacer docket shows Plaintiff has filed nearly sixty copyright infringement lawsuits concerning photographs he purports to freely license.

Hon. Analisa Torres
September 5, 2017
Page 4

      Defendant UMG owns and operates the country music news website www.soundslikenashville.com (the "SLN Website"). Plaintiff filed copyright infringement claims against UMG for allegedly posting cropped and thumbnail sized portions of the Photographs in three artist biography sections on the SLN Website. UMG denies that the alleged use was infringing.

      Moreover, UMG has notified Plaintiff's counsel that the two copyright registrations covering the Photographs are invalid. Plaintiff registered the Photographs as part of *unpublished* collections. *See* Dkt. No. 1, Compl. ¶¶ 9-12, Exs. B, D (Travis and Chesney Photographs, Registration # VAu 1-164-264, August 21, 2013); ¶¶ 13-15, Ex. F (Nelson Photograph, Registration # VAu 1-132-411, September 5, 2012).[1] However, Plaintiff had already *published* the Nelson and Travis Photographs on Wikimedia before he filed the two registrations as containing *unpublished* photographs.

      Specifically, Plaintiff twice asserted in prior lawsuits that he published the same Nelson Photograph on Wikimedia and made it freely licensable to third parties nearly a year and half prior to registering it as an unpublished work. *See, e.g.*, *Philpot v. Celebrity Cafe.Com, LLC*, No. 14-CV-1982 (S.D. Ind. 2015), Dkt. 1, Compl. ¶ 11 ("Nelson Photo was first published on the World Wide Web May 31, 2011" to the Wikimedia website); *Philpot v. Oak Ridge Boys Theater*, No. 14-CV-1357 (S.D. Ind. 2016), Dkt. 1, Compl. ¶ 9 (same). Additionally, the user "LGPhilpot" uploaded the Travis Photograph to Wikimedia and made it freely licensable to third-parties on July 8, 2013 – over six weeks prior to the August 21, 2013 registration. *See* Wikimedia, Travis Photograph, available at
*https://commons.wikimedia.org/wiki/File:Randy_Travis_performs_at_the_dedication_of_the_Johnny_Cash_postage_stamp,_June_5,_2013.jpg* (last visited August 24, 2017).[2]

      Plaintiff's registration of the previously published Travis and Nelson photographs as part of *unpublished* collections is a fundamental error that renders the registrations invalid. *See, e.g.*, *Family Dollar Stores*, 896 F. Supp. 2d at 229-30 ("Wrongly identifying a number of published individual works as an unpublished collection is a fundamental registration error," requiring invalidation of a copyright registration); *Determined Prods., Inc. v. Koster*, No. 92-cv-1697, 1993 U.S. Dist. LEXIS 4586, at *1-3 (N.D. Cal. Apr. 13, 1993) (dismissing copyright claims after finding that works published prior to being registered as unpublished was a fundamental error that invalidates the registrations); *Granse v. Brown*, No. 3-80-338, 1985 U.S. Dist. LEXIS

---

[1] The "u" represents that the works are unpublished. *Family Dollar Stores, Inc. v. United Fabrics Intern., Inc.*, 896 F. Supp. 2d 223, 225 (S.D.N.Y. 2012).

[2] The Copyright Act "publication" definition provides that "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." 17 U.S.C. § 101; s*ee also* U.S. Copyright Office, *Compendium III: Compendium of Copyright Office Practices* at § 1008.3(B) ("the fact that a photographer offered a photograph to multiple stock photo companies or website for purposes of further distribution creates a reasonable inference that an offer to distribute to a group of persons has been made and that publication has occurred.").

18318 (D. Minn. July 1, 1985) ("Because Granse registered published works as unpublished collections, those registrations . . . are invalid."). Without valid copyright registrations for the Photographs, Plaintiff cannot maintain his copyright infringement lawsuit. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010).

2. Motions

    a.  Philpot's statement.

    Philpot does not intend to make any motions at this time, but may make a motion to establish liability at the close of discovery.

    b.  Defendant's statement.

    UMG intends to file a motion to dismiss as it believes the registrations involved are invalid and the complaint must be dismissed.

3. Discovery

    a.  Philpot's statement.

    UMG's motion to dismiss should not stay discovery. UMG's motion to invalidate the copyright registrations requires the resolution of factual issues under 17 U.S.C. § 411(b), that cannot be resolved on a motion to dismiss.

    b.  Defendants' statement.

    The parties request that fact discovery be held in abeyance until resolution of UMG's motion. The motion to dismiss could resolve the action in its entirety, in which case discovery would have raised unnecessary costs for the parties and the Court.

4. Settlement

    a.  Philpot's statement

    The parties have had initial settlement negotiations, but remain far apart.

    b.  Defendant's statement

    UMG states that it remains willing to find a reasonable resolution to this case but believes that Plaintiff's financial settlement demands have been inordinate. UMG respectfully requests that the Court refer the parties to a mediation or settlement conference to avoid unnecessary litigation costs and conserve this Court's resources.

Hon. Analisa Torres
September 5, 2017
Page 6

      The parties each propose different case management plans.  Plaintiff's proposed plan contemplates discovery beginning immediately.  Defendant's proposed plan contemplates discovery beginning after the Court's ruling on Defendant's impending motion to dismiss.

                                       Respectfully yours,

                                       William Dunnegan

cc:  Nicholas Tardif, Esq.  (By ECF)
      Matthew J. Oppenheim, Esq. (By E-mail)
      Kerry M. Mustico, Esq. (By E-mail)