UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

LARRY PHILPOT

    Plaintiff,

v.

UMG RECORDINGS, INC.,

    Defendant.

Case No. 1:17-cv-05058-AT

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Defendant UMG Recordings, Inc. ("UMG") hereby submits this reply to Plaintiff Larry Philpot's ("Plaintiff") Memorandum in Opposition to UMG's Motion to Dismiss Plaintiff's complaint for failure to state a claim (ECF No. 25) ("Plaintiff's Opp.").

## INTRODUCTION

In this action for alleged copyright infringement, the allegations plainly show that Plaintiff relies upon registrations that are invalid. Plaintiff registered the photographs of the musicians Willie Nelson, Kenny Chesney, and Randy Travis (the "Photographs") as part of unpublished collections even though he had already posted the Nelson and Travis Photographs to Wikimedia Commons ("Wikimedia") for public distribution. Plaintiff was obviously aware of his own actions in having already uploaded the Photographs to Wikimedia for public sharing, and such posting unquestionably amounts to a publication. For its part, the Copyright Office would have refused registration had it known how Plaintiff proceeded in terms of registering published photos as unpublished. Indeed, it has said so expressly time and again in analogous circumstances. Without valid certificates of registration, Plaintiff's claims must be dismissed.

## ARGUMENT

I. **PLAINTIFF PUBLISHED THE PHOTOGRAPHS WHEN HE POSTED THEM ON WIKIMEDIA**

First, as a factual matter, Plaintiff posted or authorized someone to post the Travis and Nelson Photographs to Wikimedia. Plaintiff does not dispute this, even if his brief intimates the potential involvement of a "file upload bot" in the upload of the Nelson Photograph. Plaintiff's Opp., at 8. What matters is that Plaintiff has again and again admitted that he "agreed to make the [Nelson Photograph] generally available through Wikimedia." Lichtman Decl. ¶ 7, Ex. 4.[1]

---

[1] Declaration of Leo M. Lichtman ("Lichtman Decl.") (ECF No. 24), filed in support of UMG's

Second, as a legal matter, it is beyond dispute that when Plaintiff posted the Photographs on Wikimedia for the express purpose of allowing the public to share the Photographs, *see* Lichtman Decl. ¶¶ 2-6, Exs. 1-3, he published them as a matter of law. It is well settled that a work is published when it is made available to members of the public regardless of who they are or what they will do with it. *See, e.g., Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 288 F. Supp. 2d 544, 555 (S.D.N.Y. 2003) (finding publication occurred where plaintiffs provided copies of their manuscript to several people without limiting their downstream distribution); *Kakizaki v. Riedel*, 811 F. Supp. 129, 131 (S.D.N.Y. 1992) (finding publication occurred where plaintiff provided a copy of his photograph to one person and invited that person to distribute the photograph without restriction). This is the case even if a sale or other such disposition does not in fact occur. *Penguin Books*, 288 F. Supp. 2d at 555.

Plaintiff argues that posting a work on the Internet does not automatically constitute "publication." Plaintiff's Opp., at 6. But Plaintiff frames the issue in an unduly narrow manner. The scenario here involves not mere posting in the abstract, but rather, posting *for further distribution, performance, and display*. Courts routinely have determined that this type of posting constitutes publication. *See, e.g., Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1364 (S.D. Fla. 2011) (stating that the work was published where it was "not merely viewable . . . on the Internet . . . it was also available for downloading and copying"); *William Wade Waller Co. v. Nexstar Broad., Inc.*, No. 4-10-CV-00764 GTE, 2011 WL 2648584, 2011 U.S. Dist. LEXIS 72803, at *5, 7 (E.D. Ak. July 6, 2011) (finding publication occurred where plaintiff posted the photos to the website "and allowed anyone to use the pictures, the only limitation to free access being that users were asked to leave the . . . logo on the photos"); *Archie MD, Inc. v.*

---

motion to dismiss Plaintiff's complaint for failure to state a claim.

*Elsevier, Inc.*, 16-cv-6614 (JSR), 2017 U.S. Dist. LEXIS 13381, at * 11 (S.D.N.Y. Aug. 20, 2017) (finding publication occurred where plaintiff made works available online to defendant, and provided defendant with a "worldwide license to use, reproduce, publish, transmit, and distribute the work"). "The common theme running through these decisions is the ability of the Internet user to download a file containing a copyrighted work and thereby gain control of it, that is, gain a proprietary or possessory interest in the copyrighted work." *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 401 (S.D.N.Y. 2002).

Plaintiff attempts to distinguish *Getaped.com* by pointing to two cases that criticized it. Plaintiff's Opp., at 6 (citing *Elliot v. Gouverneur Tribune Press, Inc.*, 13 Civ. 0005 (MAD), 2014 WL 12598375, 2014 U.S. Dist. LEXIS 193167, at *3 (N.D.N.Y. Sept. 29, 2014) and *Rogers v. Better Business Bureau of Metro. Houston, Inc.*, 887 F. Supp. 2d 722 (S.D. Tex. 2012)). Yet Plaintiff's case law is inapposite, and if anything, *supports* UMG's argument. Unlike the case at bar, neither *Elliot* nor *Rogers* concerned works posted to the Internet *and* licensed for further distribution. *See Elliot*, 2014 U.S. Dist. LEXIS 193167, at *8 (denying defendants' argument that plaintiff published her photographs when she posted them online); *Rogers*, 887 F. Supp. 2d at 730-733 (rejecting defendants' argument that plaintiff published works by uploading them to the internet, where plaintiff did not license the works for public distribution). Both *Elliot* and *Rogers* acknowledge that publication "varies from case to case and is fact dependent." *Elliot*, 2014 U.S. Dist. LEXIS 193167, at *10; *Rogers*, 887 F. Supp. 2d at 731 (citing sources to suggest that publication online generally depends on whether users are authorized to make copies).

Plaintiff did not simply display the Photographs on the Internet. He freely licensed the Photographs to the public through an intermediary that is *designed* to facilitate content sharing—Wikimedia. *See* https://wikimediafoundation.org/wiki/Home [last visited Oct. 23, 2017] ("The

Wikimedia Foundation, Inc. is . . . dedicated to encouraging the growth, development and distribution of free . . . content . . . ."). Plaintiff's license, which he granted to the public when he posted the Photographs on Wikimedia, allows anyone to download, share, and display the Photographs for any purpose, with few limitations. *See* Lichtman Decl. ¶¶ 4-6, Exs. 2-3.

Straining to stave off dismissal, Plaintiff argues that there was no publication because he did not offer to distribute the copies of the Travis and Nelson Photographs to a "group of persons," within the meaning of 17 U.S.C. § 101. Plaintiff's Opp., at 5. To support this, he cites various examples of publication from the Copyright Office's *Compendium of U.S. Copyright Office Practices* ("*Compendium*") § 1906.1. *Id.* Yet one of those examples eviscerates Plaintiff's own case; namely, "Publication occurs when copies of a photograph are offered to stock photography agencies for the purpose of licensing those copies to newspapers, magazines, and websites." *Compendium* § 1906.1. Posting copies on Wikimedia for the purpose of freely and widely licensing those copies to the general public is equivalent to offering copies to a stock agency for the purpose of licensing those copies to newspapers, magazines, and websites. Plaintiff also neglects to mention that right above the very examples he cited, the Compendium expressly provides that "publication occurs when one or more copies . . . are offered to a wholesaler, a retailer, a broadcaster, an aggregator, or similar intermediaries for the purpose of distributing the work to the public or for the purpose of publicly performing or publicly displaying the work." *Compendium* § 1906.1. This, of course, is exactly what Plaintiff did when he posted the Photographs on Wikimedia.

Plaintiff authorized anyone visiting Wikimedia to share the Photographs with others, download the Photographs, and even commercially exploit the Photographs. *See* Lichtman Decl. ¶ 6, Ex. 3 (explaining in layman's terms that Plaintiff's licenses allow anyone to "remix,

4

transform, and build upon the material for any purpose, even commercially."). For him now to say that this does not squarely meet (in multiple ways) the definition of "publication" is simply absurd. *See* 17 U.S.C. § 101.

## II.  PLAINTIFF KNEW THAT HE POSTED THE PHOTOGRAPHS ON WIKIMEDIA

Plaintiff mischaracterizes UMG's arguments so that he can knock down a false strawman. Plaintiff erroneously suggests that UMG is resting on Plaintiff's prior legal conclusions, *see* Plaintiff's Opp., at 10. In actuality, UMG relies upon Plaintiff's prior factual admissions in statements to courts, not his prior legal assertions.

Plaintiff has admitted *again and again*, that, "[i]n an effort to increase his marketability and reputation, and to gain more work," Plaintiff agreed "to *make the Photos generally available through Wikimedia* for distribution, public display, and public digital performance" under Creative Commons licenses. *See* Lichtman Decl. ¶ 7, Ex. 4 (emphasis added). Plaintiff's admission is purely factual, representing a clear understanding that when he posted the Photographs to Wikimedia and licensed them through Creative Commons, he authorized further distribution. Plaintiff misses the point when he states that taking a legal position in one case does not prevent a party from taking a different legal position in another case. Plaintiff's Opp., at 10. UMG cited Plaintiff's prior *factual* positions, including in a case in this District, to show that, *at the time of registration*, he knew that he had posted the Photographs on Wikimedia for further distribution. This Court has found prior factual admissions of publication to constitute evidence of knowledge in similar circumstances, *see Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016), and should do so here.

Plaintiff argues he could not have known that his actions would constitute publication because publication is a term of art, Plaintiff's Opp., at 9, apparently taking the view that

5

Plaintiff is not responsible for his error no matter how obvious to him, because he is a layman. In doing so, Plaintiff essentially imposes fraudulent intent onto the statute; something this Court has refused to do. *See Rosen Book Works*, 188 F. Supp. 3d at 352; *Palmer/Kane LLC v. Gareth Stevens Publ'g*, No. 1:15-cv-7404-GHW, 2016 WL 6238612, 2016 U.S. Dist. LEXIS 147336, at *11-12 (S.D.N.Y. Oct. 24, 2016). Whatever Plaintiff's subjective intent or legal understanding of "publication," it defies credulity to suggest that Plaintiff's error was inadvertent when he alleged again and again on the record that he *published* his Photographs when he posted them on Wikimedia and willingly gave the public free reign to use them in any manner. *See Rosen Book Works*, 188 F. Supp. 3d at 352 ("While plaintiff objects that there is no evidence that plaintiff *knew* the information was inaccurate, plaintiff's 30(b)(6) witness testified that the works had been published by the time the May 18, 2001 application had been filed, which plaintiff surely would have known at the time as well."); *cf. Roberts v. Gordy*, 181 F. Supp. 3d 997, 1011 (S.D. Fla. 2016) ("Plaintiffs' contention that a single work may have multiple, inaccurate, inconsistent registrations so long as: each filer never intended to defraud the Copyright Office; each filer was willfully blind to the actual facts attested to in the registration; and each filer did not have actual knowledge of prior registrations, is directly contrary to well-established copyright law.").

Plaintiff also attempts to shift the blame to the Copyright Office. Plaintiff's Opp., at 9 ("Further proceedings will demonstrate that the Copyright Office supplied Philpot with an incomplete definition of "publication" during the application process for the Nelson Photograph). Curiously, Plaintiff does so only for the Nelson Photograph, and not the Travis Photograph, despite having applied for registrations less than a year apart. Regardless, the Copyright Office does not and cannot provide legal advice. *See Services of the Copyright Office,* https://www.copyright.gov/help/faq/faq-services.html [last visited Oct. 23, 2017]. Indeed, "[t]he

6

applicant—not the U.S. Copyright Office—must determine whether a work is published or unpublished." *Compendium* § 1904.1. It was therefore Plaintiff's responsibility—not the Copyright Office's—to ensure that Plaintiff provided accurate information.

*   *   *

At bottom, this case is simple. Plaintiff posted the Photographs on Wikimedia with the understanding that they would be made widely available for download, sharing, and display. Against the backdrop of those facts, Plaintiff nonetheless told the Copyright Office that *all* of the Photographs were unpublished, despite having already posted two of the Photographs on Wikimedia and later referring to them as published. Therefore, Plaintiff knowingly included inaccurate information in his applications for copyright registration. This is all that section 411(b)(1)(A) of the Copyright Act requires.

## III. PLAINTIFF'S KNOWING INACCURACY WOULD HAVE CAUSED THE REGISTER OF COPYRIGHTS TO REFUSE REGISTRATION

Despite Plaintiff's conclusory assertion to the contrary, Plaintiff's Opp., at 11, UMG has presented clear and compelling evidence that the Copyright Office would have refused registration. The Register of Copyrights has repeatedly stated that it would have denied registrations for the precise inaccuracy at issue in this case. *See* Lichtman Decl. ¶ 8, Ex. 5 (citing examples in which the Register of Copyrights indicated that it would have refused registration of an unpublished collection if it had been aware the work being registered was published prior to registration). Nevertheless, if the Court would like to refer the issue to the Register of Copyrights under 17 U.S.C. § 411(b)(2), UMG has no objections, and is confident that the Register will confirm the materiality of Plaintiff's errors, as it has already confirmed on many occasions.

## IV. AN INVALID CERTIFICATE OF REGISTRATION INVALIDATES PLAINTIFF'S ENTIRE REGISTRATION

The fundamental error committed through the inclusion of the Travis Photograph in registration VAu 1-164-624 renders this registration incapable of sustaining Plaintiff's copyright claims. The Chesney Photograph is also registered as part of the same unpublished collection VAu 1-164-624. Compl. ¶ 9. If the Court finds this certificate of registration invalid, it must dismiss Plaintiff's claims for *both* the Travis Photograph and the Chesney Photograph, regardless of the Chesney Photograph's publication status prior to registration.

The statute is clear: "A *certificate of registration* satisfies the requirements of [section 411] . . ., regardless of whether the certificate contains any inaccurate information, *unless* (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b) (emphasis added). By the plain terms of the statute, if subsections (A) and (B) are met, then the *certificate of registration* no longer satisfies the requirements of section 411.

The Copyright Office's own practices confirm the inextricable nature of group registration. Where an application for registration of an unpublished collection contains component works that are not eligible for registration under this option, a Copyright Office specialist "may communicate with the applicant to clarify the scope of the claim, ask the applicant to submit a separate application for each work, or refuse registration." *Compendium* § 1106.3. Noticeably absent is the option to issue registration for only the component works that are eligible for registration. Additionally, where the Copyright Office issues a registration for a group of related works, but subsequently determines that the applicable requirements for that option have not been met, it will consider this to be a substantive defect in the registration, and

cancel the registration if the defect is not resolved. *See Compendium* § 1807.4(D). There is no procedure for partial cancellation.

Plaintiff thus cannot rely on the accurate parts of his application to partially save a copyright registration plagued by a fundamental inaccuracy. As set forth above, if Plaintiff's copyright registration is not valid, it cannot sustain a cause of action under the Copyright Act. This is neither harsh nor unfair. By gaining the immense benefits of being able to register a virtually unlimited number of works under a single copyright registration and pay one application fee, Plaintiff maintains responsibility for ensuring that the registration is accurate—and assumes the consequences if it is not. *See Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 453 (2d Cir. 1989) ("[P]roper registration is a prerequisite to an action for infringement."); *Determined Prods., Inc. v. Koster*, No. C 92-1697 BAC, 1993 WL 120463, 1993 U.S. Dist. LEXIS 4586, at * 2 (N.D. Cal. Apr. 14, 1993) ("Wrongly identifying a number of published individual works as an unpublished collection is a fundamental registration error, which deprives this court of jurisdiction over the copyright claim.").[2]

Plaintiff's only cited authority, a non-binding decision from California, does not support his position. In *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, the Ninth Circuit refused to invalidate the plaintiff's copyright registration, finding that plaintiff's inaccuracy "*in itself* does not invalidate the registration or render the certificate of registration incapable of supporting an infringement action." 676 F.3d 841, 854 (9th Cir. 2012) (emphasis added). Unlike in the instant case, there was no evidence that the plaintiff in *L.A. Printex* knew that two of the designs it had included in an unpublished collection were published until after already submitting its

---

[2] While the registration prerequisite is no longer considered a jurisdictional requirement, *see Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010), there is no question that a valid registration is a statutory requirement. *See id.* at 158; 17 U.S.C. § 411(a).

9

application for copyright registration. *See id.* at 854. Further separating it from the instant case, when the plaintiff in *L.A. Printex* became aware of the registration error, it filed applications for supplementary registration to correct its error. *See id.* at 843, 854. Because the court did not invalidate the copyright registration, it had no reason to consider whether an invalidated registration, in part or in full, could still sustain a lawsuit.

## CONCLUSION

Plaintiff cannot continue to rely on fundamentally defective registrations. He was aware of the material inaccuracies when he registered his unpublished collections, and he is aware of the defects now. If Plaintiff wishes to bring a copyright claim for *any* of his Photographs, it is incumbent on him to ensure that they are protected by valid certificates of registration. For the foregoing reasons, UMG respectfully submits that the Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted.

Dated: October 23, 2017        Respectfully submitted,

*/s/ Leo M. Lichtman*
Matthew J. Oppenheim
Kerry M. Mustico
Leo M. Lichtman
Oppenheim + Zebrak, LLP
5225 Wisconsin Avenue NW, Suite 250
Washington, DC 20015
Tel: 202-480-2999
matt@oandzlaw.com
kerry@oandzlaw.com
leo@oandzlaw.com

*Attorneys for Defendant*