

Matthew J. Oppenheim
5225 Wisconsin Avenue NW | Suite 503
Washington, DC 20015
T:  (202) 450.3758 | F:  (866) 766-1678
matt@oandzlaw.com | www.oandzlaw.com

December 1, 2017

*Via ECF*

The Honorable Debra Freeman
United States District Court
Southern District of New York
500 Pearl Street, Room 1660
New York, NY 10007

      Re:    *Philpot v. UMG Recordings, Inc.*, 1:17-cv-05058-AT-DCF

Dear Judge Freeman:

      We represent the Defendant, UMG Recordings, Inc. ("UMG"), in the above-referenced case.  Currently pending before Your Honor is UMG's request for the Court to require the parties and their counsel to attend a settlement conference, along with UMG's request for a discovery conference.  (See ECF Nos. 29-32).  The purpose of this letter is to request a pre-motion conference on two related issues not yet before the Court.  Specifically, pursuant to Federal Rule of Civil Procedure 26(c), UMG seeks a protective order regarding a Federal Rule Civil Procedure 30(b)(6) deposition notice that is oppressive and subjects UMG to undue burden and expense.  Also, pursuant to Federal Rule of Civil Procedure 37, UMG seeks an order that compels Plaintiff to search for and produce responsive, non-privileged documents in the physical custody of his other current or former counsel.[1]

## BACKGROUND

      UMG is one of the world's leading record companies.  UMG has invested enormous sums of money, time, and creative efforts to develop and market some of the world's most popular music.  It therefore not only understands the value of copyrights, but the importance of respecting and protecting copyrights.  UMG owns and operates the

---

[1] Attached hereto as Exhibit A is an accompanying statement pursuant to Your Honor's Individual Practices concerning UMG's attempt to resolve this discovery dispute with Plaintiff.  Attached hereto as Exhibit B is a copy of the 30(b)(6) deposition notice from Plaintiff dated November 22, 2017.  Attached hereto as Exhibit C are the relevant excerpts from UMG's First Request for Production of Documents.

country news website www.soundslikenashville.com (the "SLN Website."). The SLN website features informative country music articles, album reviews, and artist biographies, among other information.

Plaintiff states he is a professional music photojournalist. Plaintiff profits from his photographs through litigation and demand letters, not via prospective licenses. Plaintiff posts his photographs online, including to the public website Wikimedia Commons (www.commons.wikimedia.org) ("Wikimedia"), where he gives them away under a free license to download, reproduce, and display the photographs in all media and formats, for any purpose. The license is subject to minor limitations, such as providing reasonable attribution. Despite licensing his photographs for no charge, Plaintiff files copyright infringement lawsuits and demands exorbitant financial settlements when someone uses the photographs outside of the minor limitations of the license. Plaintiff has established himself to be a serial litigant, filing over 60 lawsuits, along with making an unknown number of litigation threats, and seeking to ensnare users of the otherwise-free photographs into costly settlements.[2]

Among the photographs Plaintiff has published and freely licensed on Wikimedia are photographs of the musicians Willie Nelson, Kenny Chesney, and Randy Travis (the "Photographs"). In the instant action, Plaintiff alleges that UMG reproduced and displayed thumbnail-sized portions of the Photographs in connection with three artist biography pages on the SLN Website. Compl. ¶¶ 16, 20, 24. The artist biography pages on the SLN Website that Plaintiff alleges displayed the Photograph thumbnails had a combined total of 224 unique page views during the pertinent period of April 12, 2016 through June 26, 2017, when UMG promptly removed the Photographs from the artist biography pages upon receiving a demand letter. Plaintiff presses forward with the action nonetheless, alleging that a failure to provide attribution in connection with use of thumbnail-sized versions of freely licensed photographs, on webpages that were barely visited, merits exorbitant damages plus attorney's fees.

In an effort to resolve this matter without further litigation, UMG made a generous offer of judgment, which Plaintiff subsequently ignored. UMG made this offer even though there are substantial issues concerning the potential invalidity of Plaintiff's copyright registrations, numerous hurdles to proving liability, and questionable, but exceedingly low damages at best. Plaintiff also has objected to the idea of a settlement conference before the close of discovery. Instead, Plaintiff has bombarded UMG with extensive written discovery, including 71 document requests and 204 requests to admit. Plaintiff noticed the depositions, at the offices of his attorneys in New York City, of three UMG employees who are located in Nashville, Tennessee, as well as UMG's corporate deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). At the same time, with

---

[2] *See, e.g., Philpot v. Music Times LLC*, No. 16cv1277, 2017 U.S. Dist. LEXIS 48454 (S.D.N.Y. Mar. 29, 2017) ("[S]ince January 2016, Plaintiff has filed at least 15 other copyright cases in this Court, and they all seem to reflect a pattern of extremely limited work by counsel. Of the other cases that this Court has identified, five were settled or otherwise voluntarily dismissed shortly after the cases were commenced. In each of the remaining 10 cases, Plaintiff filed a complaint through counsel, and then — as in this case — counsel sought leave to withdraw, typically within two to three months of the date when the action was filed.").

2

respect to Plaintiff's own document production, he refuses to collect responsive documents from his other current or former counsel.

## ARGUMENT

### I. A Protective Order Is Needed As To Plaintiff's Oppressive 30(b)(6) Notice

Plaintiff's 30(b)(6) notice to UMG is oppressive.  Plaintiff is improperly utilizing discovery in this litigation in an attempt to extract a windfall settlement.  Under Rule 26(b)(1), a party may obtain discovery only where it "is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Plainly, the 30(b)(6) notice runs afoul of that standard.  *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, 11-1846 LHK (PSG), 2012 WL 1511901, 2012 U.S. Dist. LEXIS 9921, at *13 (N.D. Cal. Jan. 27, 2012) ("[T]he purpose served by Fed. R. Civ. P. 30(b)(6) . . . does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation.").  Accordingly, UMG seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c).

The 30(b)(6) notice goes far beyond anything reasonably tailored to the actual facts and circumstances of this case.  The number of topics alone in this notice present an inordinate burden and expense.  It commands UMG to present one or more witnesses prepared to address a total of 66 separately enumerated topics.  Worse yet, some of the topics expressly contain at least one dozen or more separate topics, though styled as sub-topics.  In all, there are well over 100 topics.  The obligations of a defendant being deposed under Rule 30(b)(6) are very serious.  Preparing one or more witnesses so they can fully address these topics, which cover a broad scope of areas, will require extensive time and costs that are disproportional to the needs of the case.  The Court should not let Plaintiff proceed with such a notice.  *See, e.g., FDIC v. Wachovia Ins. Serv., Inc.*, 2007 U.S. Dist. LEXIS 62538, 2007 WL 2460685, 2007 U.S. Dist. LEXIS 62538, at *13 (D. Conn. Aug. 27, 2007) (quashing 30(b)(6) notice that would have burdened plaintiff with educating representatives in a number of topic areas in different categories of documents, many of which were of marginal, tangential, or dubious relevance, such that enforcement of the deposition notice would have been abusive).

Apart from the facially excessive number of topics, many of them are irrelevant and excessive in scope.  For instance, even though this case centers on use of three thumbnails on three specific artist biography pages on the SLN website, the 30(b)(6) notice seeks to have UMG testify to the conception, development and maintenance of the whole category of artist biographies (of which there are hundreds), including the identities of each person involved, the steps each person took, and related communications. (Topics 7-9.)  One topic provides a list of eighteen different people, and demands that UMG be prepared to testify fully to the actions that each of those eighteen listed persons took to conceive, develop and/or maintain any of the hundreds of artist biography pages. (Topic 11.)  There is another topic aimed at the "respective roles,

responsibilities, divisions of labor, and actions" of UMG and two outside vendors, but again as to the "conception, development, and maintenance" of the whole category of artist pages. (Topic 10.) Even where the topics actually focus on just those three artist biography pages that contained the allegedly infringing Photograph thumbnails, the notice seeks UMG designees fully prepared to testify to information having nothing to do with the thumbnails, such as the identity of each person involved in adding any information or other content to the pages, the steps each person took, and related communications. (Topics 16-19; 24-27; 32-35.) UMG is also told to have someone testify to the copyright training that at least seven of those persons received. (Topics 47 and 48.) This is all far too expansive. It is of little to no relevance, yet presents demands and burdens that are impracticable.

There is another topic that demands UMG bring one or more witnesses fully prepared to testify to "UMG's claims for statutory damages for copyright infringement, including but not limited to its factual bases and defense on appeal of the amount of statutory damages that the jury awarded, in: a. Capitol Record, Inc. v. Thomas-Rasset, b. Sony BMG Music Entertainment, et al., v. Tenenbaum, c. UMG v. Escape Media Grp., Inc., d. UMG v. Golden Eagle, and e. UMG v. MP3.com." (Topic 53.) Of course, it is an absurdly over-burdensome, if not impossible task, for UMG to try to have one or more witnesses fully prepared to explain the facts presented to juries, along with legal arguments made on appeal, in five unrelated lawsuits that cover a span of almost 20 years. The request is even more wrongheaded when considering that none of it will be admissible. Besides being irrelevant with respect to the claims and defenses in this case, it is a non-starter under Federal Rule of Evidence 403. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 578109, 2005 U.S. Dist. LEXIS 3391, at *7-8 (S.D.N.Y. Mar. 7, 2005) (excluding evidence related to other lawsuits involving defendant because their probative value is "substantially outweighed by the burden that the admission of this evidence would place on [defendant] to explain the circumstances at issue in these lawsuits, by the waste of time that would accompany such explanations, and by the danger that admission of this evidence will create unfair prejudice against [defendant]").

The 30(b)(6) notice also delves squarely into matters protected by attorney-client privilege and work product. For instance, UMG is supposed to have someone testify to the identity of each person employed, retained, consulted, or otherwise hired by UMG to review various documents that Plaintiff produced in discovery to UMG's counsel and the date each individual first received and/or reviewed them. (Topic 60.) Likewise, Plaintiff seeks to depose UMG on the documents its counsel chose to have UMG review in preparing responses to requests for admissions. (Topic 65.)

The list of problems goes on and on. As mentioned, this case is about three allegedly infringing thumbnails, only because of use without attribution, that appeared on three artist biography webpages on UMG's SLN website, and which were barely viewed (i.e., 224 unique page views). Nevertheless, Plaintiff's 30(b)(6) notice purports to require UMG – a content creator with thousands of employees – to have one or more witnesses prepared to testify fully about each communication between or among UMG employees

4

or representatives, including a list of seven people specifically named, regarding (i) the use of copyrighted material, including but not limited to photographs, (ii) the use of content from Wikipedia and/or Wikimedia, and/or (iii) the reproduction of photographs on URLs UMG controls or controlled. (Topic 52.). Similarly, even though this case is against UMG, not UMG's affiliates, and there is no evidence of any use of any of Mr. Philpot's photographs by affiliates of UMG, the notice nonetheless demands testimony about any use of certain of Mr. Philpot's photographs by affiliates of UMG, along with related communications. (Topics 61-63.)

For these and other reasons, both as to the deposition topics addressed herein and others in the notice, UMG seeks a protective order. Plaintiff's pursuit of discovery is simply disproportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

## II. Plaintiff Must Search For The Discoverable Documents With His Attorneys

Along with acting *pro se*, Plaintiff has worked with several different attorneys in sending demand letters and bringing litigation concerning one or more of the three Photographs that he has accused UMG of infringing. Those cases also revolved around a permitted use alleged to be infringing only because Plaintiff did not receive attribution. Yet Plaintiff improperly refuses to search for responsive, non-privileged documents that very likely may reside with such attorneys.

Plaintiff's counsel in the instant action, Dunnegan and Scileppi, LLC, has confirmed that, after receiving UMG's document requests, Plaintiff did not approach those other lawyers for responsive, non-privileged documents. Instead, with one exception, Plaintiff flatly refuses to make any effort at all to retrieve whatever responsive documents are with his other current or former counsel, claiming that doing so represents a burden that is disproportional to this case.

Plaintiff's refusal to conduct a reasonable search for documents is obviously improper. Documents are not privileged simply because they are in the hands of counsel. *See Chevron Corp. v. Donziger*, 296 F.R.D. 168, 202 (S.D.N.Y. 2013) ("Attorneys often come into possession of relevant documents that are neither attorney-client communications nor work product and which therefore are discoverable."). It is "hornbook law that delivering pre-existing documents to a lawyer does not change a party's obligation to produce them in litigation." *In re Marshall*, No. SACV-01-0097, 2013 U.S. Dist. LEXIS 76330, *49 (C.D. Cal. May 29, 2013); *see also Scovin v. Great W. Life & Annuity Ins. Co.*, No. 3:02CV1161 (AWT), 2006 WL 2828428, 2006 U.S. Dist. LEXIS 71386, at *11 (S.D.N.Y. Sept. 29, 2006) ("Documents that are in the possession of a party's attorney of record are within the party's possession, custody and control for discovery purposes"); *Hanson v. Gartland S.S. Co.*, 34 F.R.D. 493, 496 (N.D. Ohio 1964) ("If the items were originally produced by the party or his agents, and then turned over to the attorney, they are considered under the party's

control."). Plaintiff cannot ignore that a search is required of those sources. *See, e.g., Finkelstein v. District of Columbia.*, No. 85-2616, 1987 WL 14976, at *6 (D.D.C. July 22, 1987) (suggesting that Fed. R. Civ. P. 34 contemplates that a party will conduct a diligent search through all likely repositories of records); *see also In re Independent Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 653 (D. Kan. 1996) (stating that a party "cannot meet its discovery obligations by sticking its head in the sand and refusing to look for the answers and then saying it does not know the answer").

It is unreasonable to rely solely upon Plaintiff's memory. He is not a lawyer and has filed actions with several different attorneys. It is likely he does not know or cannot sufficiently recall of what he previously provided his other attorneys, along with how that relates to what he currently does or does not have within his own possession. Indeed, Plaintiff himself told one court that he "completely overwhelmed himself by filing too many actions." *See* Plaintiff's Mot. For Reconsideration of Dismissal, *Philpot v. Music Times, LLC*, No. 1-14-cv-01978-JMS-TAB (S.D. Ind. Aug. 26, 2015) (ECF No. 10). Plaintiff has had a detached relationship with several of those attorneys. One of Plaintiff's former attorneys, in a representation made to this Court, referred to having "a complete and absolute breakdown in communication" with Mr. Philpot. *See* Declaration of Richard M. Garbarini, *Philpot v. Kanter*, No. 16-cv-1331 (RWS) (S.D.N.Y. Apr. 15, 2016) (ECF No. 17) (seeking to withdraw from lawsuit against (as per ECF. No. 12) a 73-year old semi-retired freelance writer receiving social security who used photo of Willie Nelson on her blog). Another one of Plaintiff's attorneys, also in a representation made to this Court, referred to an impossibility in continuing the representation because "[a]fter repeated attempts" there was "no communication[.]" *See* Declaration of Richard Leibowitz, *Philpot v. IheartMedia, Inc.,* No. 16-cv-9156-AJN (S.D.N.Y. Feb. 8, 2017) (ECF No. 14-1). In the circumstances presented, it is reasonable to expect that Plaintiff, a non-lawyer, does not have a sufficient recollection of the non-privileged, responsive documents that are currently in the hands of his other current or former counsel, and which are not yet produced in this action.

The documents that Plaintiffs seek are important. With substantial questions in the case concerning whether Plaintiff's copyright registrations are invalid, *see* ECF Nos. 23, 26, 27, there are four document requests involving his registration efforts and related communications. (Request Nos. 2-5.) The issue of when Plaintiff published each of the Photographs in suit is significant, as he registered them as part of unpublished collections. Accordingly, there are requests concerning his licensing activity, instances of uploading the Photographs to the Internet, and descriptions of the photos as published. (Request Nos. 6-10.) Finally, there is a request for documents concerning the lawsuits that Plaintiff brought alleging infringement of any of the Photographs that he has accused UMG of infringing. (Request No. 21.)[3]

---

[3] Request 21 is the one exception, where Plaintiff purports to be somewhat willing to obtain responsive, non-privileged documents from his attorneys. Plaintiff has agreed to obtain from counsel his sworn testimony (interrogatories, declarations or depositions) in cases involving any of the three Photographs at issue, but only in those instances where he recalls that he provided such testimony and that he does not have it within his own physical possession. For the reasons discussed above, however, UMG should not have to rely solely upon Plaintiff's recollection.

The Court should reject Plaintiff's assertion that seeking responsive, non-privileged documents from his other counsel represents a burden that is disproportional to this case and the documents sought.  Plaintiff seeks hundreds of thousands of dollars in statutory damages plus attorneys' fees.  The documents with his prior counsel, concerning enforcement matters involving one or more of the same three Photographs that he has accused UMG of infringing, are records that belong to Plaintiff.  He is obligated to obtain them and can do so.  UMG should not be prevented from defending this action on the basis that Plaintiff, due to his tenuous relationships with his various attorneys, prefers not to interact with them.  *C.f. Tri-Ex Enterprises, Inc. v. Morgan Guaranty Trust Co.*, 583 F. Supp. 1116, 1118 (S.D.N.Y. 1984) ("[I]t would be inequitable to deny a litigant access to relevant, and perhaps essential, proof merely because his adversary has refused to pay his attorney's fees . . . . It would be strange indeed if one could insulate himself from proof tending to establish his liability to another by placing that proof in the hands of an attorney and then refusing to pay the attorney's charges.").

Plaintiff should be ordered to search for any responsive, non-privileged documents that are in the possession of his other current or former counsel who have represented him in matters involving one or more of the three Photographs at issue.  To ensure the adequacy of that search, along with any follow up that may be necessary, UMG requests that Plaintiff be required to identify the attorneys whom he approaches and the results of those inquiries.

UMG appreciates the Court's time and consideration on these matters.

                                        Respectfully,

                                        /s/

                                        Matthew Oppenheim

cc: Plaintiff's Counsel (via ECF)